UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-21940-CIV-ALTONAGA

TYRA NANCE,

    Movant,
v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

**ORDER**

**THIS CAUSE** comes before the Court on Movant, Tyra Nance's Motion Under 28 U.S.C. [section] 2255 to Vacate, Set Aside, or Correct Sentence [ECF No. 1], filed on May 1, 2022.[1] The Motion alleges three claims concerning the Court and her counsel. (*See generally* Mot.). Respondent filed a Response [ECF No. 6], with attached exhibits [ECF Nos. 6-1, 6-2].[2] To date, Movant has not filed a reply, and the time to do so has passed. The Court has carefully reviewed the parties' written submissions, the record, and applicable law. For the following reasons, the Motion is denied.

    **I.**    **BACKGROUND**

On December 3, 2020, Movant and her Co-Defendant, Amos J. Roberts, were indicted on charges of conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. section 1951(a) (Count I); Hobbs Act Robbery, in violation of 18 U.S.C. section 1951(a) (Count II); brandishing

---

[1] "Under the 'prison mailbox rule,' a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (citations omitted).

[2] Exhibit A [ECF No. 6-1] contains the October 21, 2021 Sentencing Transcript (hereinafter "Sentencing Tr."); and Exhibit B [ECF No. 6-2] contains the August 3, 2021 Change of Plea Transcript (hereinafter "Change of Plea Tr.").

a firearm in furtherance of a crime of violence, that is, in violation of 18 U.S.C. section 1951(a), as charged in Count II, in violation of 18 U.S.C. section 924(c)(1)(A) (Count III); Hobbs Act Robbery, in violation of 18 U.S.C. section 1951(a) (Count IV); and brandishing a firearm in furtherance of a crime of violence, that is, in violation of 18 U.S.C. section 1951(a), as charged in Count IV, in violation of 18 U.S.C. section 924(c)(1)(A) (Count V); and the Co-Defendant was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. section 922(g) (Count VI). (*See* Indictment [CR ECF No. 30] 1–4).[3]

### A. Offense Facts

On March 31, 2020, Movant and the Co-Defendant committed two robberies at fast food drive-through windows. (*See generally* Factual Proffer [ECF No. 58]). At approximately 10:40 a.m., Movant drove a gray Chevrolet Impala to a Burger King. (*See id.* 1). Movant drove the vehicle, and the Co-Defendant sat on the backseat. (*See id.*). "As captured on video surveillance, the Defendant stopped the vehicle short of the drive-thru menu, exited the vehicle, and placed a cover over the vehicle's license plate. She then re-entered the vehicle and moved it to the drive-thru speaker, where an order was placed." (*Id.*). When the employee opened the cash register, the Co-Defendant brandished a black rifle, took the money, and fled the scene in the car driven by Movant. (*See id.*).

Movant and the Co-Defendant repeated the crime, this time at a Wendy's drive-through window. (*See id.* 2). Later that day, law enforcement located the gray Impala. (*See id.*). While conducting surveillance of the parked car, police observed Movant and the Co-Defendant entering. (*See id.*). Officers detained the two and found the black rifle in the car. (*See id.*).

### B. Change of Plea

On August 3, 2021, Movant executed a written Plea Agreement [CR ECF No. 57] in which

---

[3] References to docket entries in Movant's criminal case, Case No. 20-20247-CR, are denoted with "CR ECF No."

she agreed to plead guilty to Counts I through V of the Indictment. (*See id.* ¶ 1). Movant acknowledged that the Court would impose a sentence after considering the advisory Sentencing Guidelines, but the Court retained the authority to impose any sentence within and up to the statutory maximum authorized by law. (*See id.* ¶ 3). Further, the Plea Agreement acknowledged that Movant would not be permitted to withdraw her plea "solely as a result of the sentence imposed." (*Id.*).

Movant further acknowledged that, as to Counts III and V, the Court could impose a statutory maximum term of imprisonment of up to life and had to impose a statutory minimum term of imprisonment of seven years on each count. (*See id.* ¶ 4). These sentences would run consecutively to each other; as well as to any other sentence imposed on Counts I, II, and IV. (*See id.*).

The Government agreed it would recommend that the Court reduce by two or three levels Movant's sentencing Guidelines level for her timely acceptance of personal responsibility. (*See id.* ¶ 7). Movant further agreed that she would cooperate fully with the Government and not protect any person or entity through false information or omission. (*See id.* ¶ 8). Movant also agreed not to falsely implicate any person or entity or commit further crimes. (*See id.*).

Movant acknowledged that the Government reserved the right to evaluate the nature and extent of her cooperation and to make that cooperation known to the Court at the time of sentencing. (*See id.* ¶ 9). The Plea Agreement provided that it was the Government's "sole and unreviewable judgment" as to whether it would file a motion for a reduction in sentence at the completion of any cooperation. (*Id.*). Movant understood that the Court was under no obligation to grant a motion for a reduction of sentence filed by the Government. (*See id.* ¶ 10).

Finally, Movant acknowledged her right to appeal under 18 U.S.C. section 3742 and 28

U.S.C. section 1291. (*See id*. ¶ 12). She agreed to waive her right to appeal any sentence, or to appeal the way the sentence was imposed, unless the sentence exceeded the statutory maximum or was the result of an upward departure or upward variance. (*See id.*).

The Court accepted Movant's guilty plea on August 3, 2021. (*See generally* Change of Plea Tr.). During the Change of Plea colloquy, Movant stated that she understood all the charges to which she was pleading guilty and the elements of those offenses. (*See id.* 5:23–8:22).[4] The Undersigned then inquired of Movant's attorney as to the steps he had taken to ensure Movant understood "the charges against her, the Government's evidence, her defenses, her right to proceed to trial, and the consequences of her guilty plea." (*Id.* 7:23–25). Movant's counsel made the following statements:

> Yes, Your Honor. I met with Ms. Nance several times. I have had several phone calls with her while she was in custody, and e-mails. I have gone through the discovery with her, the Indictment, the video graphic evidence that the Government has provided in discovery, all of which indicates that her codefendant, Mr. Roberts, participated in the robberies and brandished the firearm; in addition to Ms. Nance's taped confession, in which she agreed to be the getaway driver in the robberies that were alleged in the Government's Indictment.

(*Id.* 8:1–10). Movant assented to her counsel's statements. (*See id.* 8:20–22).

Next, the Undersigned reviewed the Plea Agreement with Movant, confirming her signature on the document. (*See id.* 8:23–9:6). The Court reviewed the various penalties with Movant, including the statutory maximum sentences for each count and the mandatory minimum sentences for Counts III and V — seven years that must run consecutively to one another and to any terms of imprisonment imposed on Counts I, II, and IV of the Indictment. (*See id*. 9:7–12:3). When asked if she understood the maximum possible sentence, Movant initially shook her head no. (*See id*.

---

[4] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings. Citations to hearing transcripts rely on the pagination and line numbering in the original document.

12:2–4).

Movant's counsel then asked for — and received — a break in the proceedings to explain more clearly the maximum possible penalties Movant faced. (*See id*. 12:6–13). Thereupon, the Court again inquired of Movant whether she understood what her maximum possible sentence could be, to which she replied, "Yes." (*Id*. 12:11–13)).

The Court also explained the Plea Agreement's appellate waiver provision. (*See id.* 13:12–25). Movant confirmed that she understood and agreed to the appellate waiver. (*See id*. 14:1–2).

The Court further inquired as to whether anyone was exerting pressure on Movant or forcing her to plead guilty and agree to the terms contained in the Agreement, to which she replied, "No." (*Id.* 14:3–6). Movant further acknowledged that she was pleading guilty of her own free will because she was, in fact, guilty as charged. (*See id*. 14:11–13).

After that acknowledgement, the Court reviewed the Factual Proffer with Movant. (*See id*. 15:24–16:5). Movant acknowledged having reviewed it with her attorney and verified her signature. (*See id*.). The Undersigned then recited the facts of the offense as stated in the Proffer; Movant acknowledged those as true and correct. (*See id*. 16:6–17:22). Movant pleaded guilty to Counts I through V (*see id*. 18:3–5) and acknowledged that she was fully satisfied with her attorney's representation and advice (*see id*. 5:16–22).

C.   **Sentencing**

Prior to sentencing, Movant filed a Sentencing Memorandum and Motion for Downward Departure and Downward Variance [CR ECF No. 72]. In the Motion, Movant requested a downward departure under section 5K1.1 of the Sentencing Guidelines based on her substantial assistance to the Government as well as a downward variance based on the 18 U.S.C. section

3553(a) factors. (*See id.* 1). She again acknowledged the mandatory minimum sentence of seven years, consecutive on each 18 U.S.C. section 924(c) count for brandishing a firearm in relation to a crime of violence, but nonetheless requested that the Court impose a sentence within the Guidelines range of 18 to 24 months of imprisonment. (*See id*. 6–7).

The Court sentenced Movant on October 21, 2021. (*See* Mot. 1). At the sentencing hearing, Movant confirmed that she had reviewed with her counsel both the Presentence Investigation Report ("PSI") and the Sentencing Memorandum. (*See* Sentencing Tr. 3:17–24). The Government also announced its intention to file a Rule 35 motion once Movant's Co-Defendant — the other robbery participant — was sentenced. (*See id*. 4:3–10).

Movant then requested a sentence of two consecutive seven-year terms for each of the section 924(c) counts. (*See id*. 9:9–16). That would have been 14 years in total — the statutory minimum. (*See id*.). Movant spoke to the Court, apologizing to the victims and their families, and stated that she was taking full responsibility for her actions and involvement in the charged crimes. (*See id*. 9:21–10:13).

After Movant's remarks, the Court noted the PSI reflected that the Guidelines range for Counts I, II, and VI was 30 to 37 months' imprisonment. (*See id*. 10:15–21). The Court further explained to Movant that her sentence as to Counts III and V had already been "predetermined, as . . . [she knew] because of [her] plea agreement." (*Id.* (alterations added)). The only remaining issue was the sentence the Court should impose as to Counts I, II, and IV. (*See id*.).

Having reviewed the Movant's conduct, her background, and the section 3553(a) factors, the Court sentenced Movant to the low end of the advisory Guidelines range on Counts I, II and IV — 30 months concurrent. (*See id*. 12:8–17). The 30-month sentence was to be followed by the 84-month sentence imposed on Count III and the 84-month sentence on Count V, resulting in

a total sentence of 198 months. (*See id.*). Further, the Court ordered restitution in the amount of $197, jointly and severally with the Co-Defendant; supervised release of three years; and a special assessment of $500. (*See id.* 12:18–14:4). Finally, the Court noted that any notice of appeal must be filed within 14 days after entry of the judgment. (*See id.* 14:9–13).

The Court entered the Final Judgment [CR ECF No. 77] on October 21, 2021. Movant did not file a notice of appeal. In her Motion, she claims her counsel never informed her that she had the right to do so. (*See* Mot. 3). Movant now seeks to vacate the Final Judgment, arguing (1) that her sentence is excessive for someone who conspired to commit Hobbs Act Robbery; (2) her counsel failed to object that conspiracy to commit Hobbs Act Robbery is insufficient to sustain a conviction under section 924(c)(1)(A); and (3) her counsel did not inform her that she had the right to appeal. (*See* Mot. 4–10).

## II.   LEGAL STANDARDS

### A.   Section 2255

The grounds for collateral attack on final judgments under section 2255 are "extremely limited." *United States v. Marsh*, 548 F. Supp. 2d 1295, 1300 (N.D. Fla. 2008). A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F. 3d 1190, 1194 n.8 (11th Cir. 2011).

### B.   Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). When assessing counsel's performance under *Strickland*, the Court

employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (alterations added). "Where the highly deferential standards mandated by *Strickland* and [the] AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (alteration added; quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate both (1) that counsel's performance was deficient; and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687–88; *see also Harrington*, 562 U.S. at 104. To establish deficient performance, the movant must show that, considering all the circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690–91. The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (footnote omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the movant makes an insufficient showing on one of the prongs. *See id.* at 697; *see also Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013).

The *Strickland* test also applies to claims of ineffective assistance based on counsel's failure to file an appeal. *See Roe v. Flores-Ortega*, 528 U.S. 470, 476–77 (2000). If counsel disregards specific instructions from a defendant to file an appeal, then counsel acts in a manner that is professionally unreasonable. *See id.* at 477 (citing *Rodriquez v. United States*, 395 U.S. 327 (1969); other citation omitted).

Even if a defendant does not specifically request counsel to file an appeal, an attorney nonetheless has a constitutional duty to consult with his client about an appeal when: (1) "a rational defendant would want to appeal", or (2) "this particular defendant reasonably demonstrated to counsel that [s]he was interested in appealing." *Id*. at 480 (alteration added). When determining whether a rational defendant would want to appeal, relevant factors include whether the conviction follows a guilty plea, whether the defendant received the sentence bargained for as part of a plea agreement, whether the plea agreement waived appellate rights, and whether there are nonfrivolous grounds for appeal. *See id.*; *see also Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007). A guilty plea both "reduces the scope of potentially appealable issues" and indicates that "the defendant seeks an end to judicial proceedings." *Flores-Ortega*, 528 U.S. at 480.

### III. DISCUSSION

As stated, the Motion asserts three grounds for relief. (*See generally* Mot). In Ground

One, Movant states that the Court erred in:

> convicting Ms. Nance of 18 U.S.C. [section] 924(c)(1)(A) when it was not proven beyond a reasonable doubt before a jury that it was found whether Ms. Nance used or carried a firearm during and in relation to the underlying crime (Hobbs Act Robbery), or if she even possessed a firearm in furtherance of that underlying crime. In fact[,] the defendant never possessed, carried, used nor brandished any firearm. Her mitigating role consisted of driving the get-away vehicle. Had it been proven beyond a reasonable doubt, she would not have received the 168 month sentence[.] She would have received the sentence required under statute for the conspiracy to commit Hobbs Act Robbery only. This violates Ms. Nance['s] constitutional rights under the 5th, 6th, 8th, and 14th Amendment[s].

(*Id*. 4 (alterations added)).

In Ground Two, Movant argues her counsel was ineffective for failing "to object to the conspiracy to commit Hobbs Act Robbery not being a predicate of violence" to uphold the section 924(c)(1)(A) conviction. (*Id.* 5). Finally, in Ground Three,[5] she argues that her counsel was ineffective for failing "to advise Ms. Nance of her right to appeal." (*Id.* 8). Movant specifically asserts that she:

> blindly signed a plea agreement, not comprehending the depths of it. Had counsel advised the defendant of her appeal rights, Ms. Nance would have appealed her judgment immediately considering the grounds warranting relief. Counsel[']s performance prejudiced the defendant resulting [in] an excessive sentence. This violated Ms. Nance[']s constitutional rights under the 6th, 8th, [and] 14th Amendment[s].

(*Id*. 8 (alterations added)).

---

[5] The Motion skips Ground Three and goes to a Ground Four. (*See* Mot. 6–8). To simplify, the Court will refer to the Motion's final ground for relief as "Ground Three."

## A. Ground One[6]

Movant argues that the Court erred in convicting her of the section 924(c) counts because she did not carry the firearm her Co-Defendant wielded during the robberies. (*See* Mot. 4). The Government explains that Movant may be "guilty of brandishing" the weapon under an "aiding and abetting theory of liability[.]" (Resp. 16 (alteration added)). As the Government noted at the Change of Plea Hearing, an aiding and abetting theory applies if Movant had "advance knowledge that another participant in the crime would display or make the presence of a firearm known for purposes of intimidation." (Change of Plea Tr. 7:6–9); *see also Rosemond v. United States*, 572 U.S. 65, 67 (2014). Put another way, to be guilty of aiding and abetting a section 924(c) offense, the defendant must know that a co-conspirator is carrying a weapon. *See Bazemore v. United States*, 138 F.3d 947, 949 (11th Cir. 1998) ("In the present case, there was ample evidence linking Bazemore to the gun, because he was the driver of the car which carried both Abercrombie and the gun to the drug deal and because he knowingly accepted the gun's protection while he was inspecting the marijuana."); *see also Rutledge v. United States*, 138 F.3d 1358, 1359 (11th Cir. 1998). ("When Rutledge admitted to the government's stipulation that the weapon was in "their possession" and that it was used "in connection with their drug activities," he admitted to all of the elements required by aider and abettor liability.").

At the Change of Plea Hearing, Movant and her counsel agreed with the elements of the offenses set forth by the Government. (*See* Change of Plea Tr. 7:19–21; 8:20–22). The Court read Movant the Factual Proffer. (*See id.* 16:6–25, 17:1–20). Movant's counsel agreed that there was

---

[6] The Government is correct in pointing out that Ground One is procedurally barred because Movant did not challenge her criminal conviction on direct appeal; there is no cause for Movant's default nor can Movant show prejudice; and substantively, Movant is not actually innocent. (*See* Resp. 13–16 (citations omitted)). Although the claim is indeed procedurally barred, the Court proceeds to address and reject it on the merits.

11

a sufficient factual basis for Movant's Guilty Plea. (*See id.* 17:23–25, 18:1–2). Movant also agreed that all the facts contained in the Factual Proffer were true and correct. (*See id.* 17:21–22).

By agreeing to the Factual Proffer's account of events, Movant conceded to ample evidence that linked her to her Co-Defendant and his gun. Movant agreed that she placed "a cover over the car's license plate" prior to the first robbery." (*Id.* 16:14). She further agreed that she drove the car to the drive through window where the Co-Defendant "exited the vehicle *wielding a black rifle*" before taking money from the open cash register. (*Id.* 16:20–22 (emphasis added)). Finally, she admitted to fleeing the scene with the Co-Defendant before they committed another, nearly identical robbery at another fast-food drive through window later that day. (*See id.* 16: 23–25, 17:1–13).

In short, the record is straightforward. Through her role as driver, Movant aided and abetted the Co-Defendant in preparing for, committing, and fleeing the scenes of both armed robberies. *See Bazemore*, 138 F.3d at 949. There was thus no err in accepting Movant's Guilty Plea and adjudging her guilty of the section 924(c) counts.

    **B.**     **Ground Two**

In Ground Two, Movant makes a similar argument to the one she made in a March 2022 motion to reduce sentence under 18 U.S.C. section 3582(c)(2). (*See* Motion to Reduce Sentence [CR ECF No. 97]). There, Movant asserted that Hobbs Act Robbery is no longer considered a "crime of violence" for purposes of section 924(c). (*See generally id.*). This argument misinterprets the Eleventh Circuit's holding in *United States v. Eason*, which held that Hobbs Act Robbery no longer qualifies as a "crime of violence" *under U.S.S.G. section 4B1.2(a)*. 953 F.3d 1184, 1195 (11th Cir. 2020).

In an April 12, 2022 Order [CR ECF No. 102] denying the Motion to Reduce Sentence, the Court explained that Movant's conviction for Hobbs Act Robbery remained a "crime of violence" under the elements clause of section 924(c). (*See id.* 2). Nothing has changed:

> For [section] 924(c) purposes, a predicate offense qualifies as a crime of violence if it is a felony and 'has an element the use, attempted use, or threatened use of physical force against the person or property of another. *United States v. Espinosa*, No. 21-10219, 2022 WL 293991, at 3* (11th Cir. Feb. 1, 2022) (alteration added) (quoting 18 U.S.C. § 924(c)(3)(A)). Subsection (A) is referred to as the "elements clause." *Id.* (citation omitted).
>
> The Eleventh Circuit has unequivocally "held that a conviction for Hobbs Act robbery 'clearly qualifies as a crime of violence' under the elements clause." *Id.* (quoting *In re Fleur*, 824 F.3d 1337, 1340 (11th Cir. 2016); citing *United States v. St. Hubert*, 909 F.3d 335, 345-46 (11th Cir. 2018), *abrogated on other grounds by United States v. Davis*, 139 S. Ct. 2319 (2019)). Therefore, the premise of Defendant's Motion is wrong — her section 924(c)(1)(A)(ii) convictions remain valid under binding Eleventh Circuit precedent; she was not given an above-guidelines sentence.

(*Id.*) (footnote omitted).

Here, Movant's section 924(c) convictions were not predicated on Hobbs Act conspiracy. To the contrary, both section 924(c) convictions were predicated on the substantive Hobbs Act Robbery offenses as charged in Counts II and IV of the Indictment. (*See* Indictment 2–3). Because Movant's section 924(c) convictions remain valid, and because Movant's premise is inaccurate — that her section 924(c) convictions were predicated on Hobbs Act conspiracy — Movant's counsel was not ineffective in failing to make an objection. *See Chandler*, 240 F.3d at 917 (finding that counsel was not ineffective for failing to raise a meritless issue).

### C. Ground Three

In Ground Three, Movant claims her counsel was ineffective for failing to advise her of her appellate rights. (*See* Mot. 8). The Court disagrees.

As noted by the Eleventh Circuit, a "criminal defense lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal." *Otero*, 499 F.3d at 1270. Rather, in "some cases, the Sixth Amendment requires consultation; in others, it does not." *Id*. The constitutional requirement only applies if counsel has a reason to think that (1) a rational convicted defendant would want to appeal, or (2) that the convicted defendant has reasonably demonstrated a subjective interest in appealing. *See Flores-Ortega*, 528 U.S. at 480.

The second basis does not apply here. Movant does not suggest that she either specifically requested counsel to file an appeal, or that she ever expressed any interest to counsel in filing an appeal. (*See* Mot. 8). Thus, the only question is whether a rational defendant under the same circumstances as Movant would have wanted to appeal. *See Flores-Ortega*, 528 U.S. at 480. This requires consideration of the factors the Supreme Court provided in *Flores-Ortega*.

First, Movant was convicted following a Guilty Plea pursuant to a negotiated, written Plea Agreement. (*See* Change of Plea Tr. 8:23–25, 9:1-6). This tends to indicate that Movant was "seek[ing] an end to judicial proceedings." *Flores-Ortega,* 528 U.S. at 480 (alteration added).

Second, Movant "received the sentence [she] bargained for" as part of the Plea Agreement. *Otero*, 499 F.3d at 1270. (alteration added). Whether a defendant received a bargained-for sentence at the bottom of the Guidelines is a relevant consideration. *See Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008). At sentencing, the Court imposed a sentence at the bottom of the Guidelines range as to Count I, and additional statutorily-mandated consecutive sentences of 84 months as to each of Counts III and V. (*See generally* J.).

Movant was also cooperating with the Government and later was the subject of a Rule 35 Motion to Reduce Sentence. (*See* Resp. 27). The Court granted that Motion and reduced Movant's

sentence from 198 months to 119 months' imprisonment. (*See* Order Granting Motion to Reduce Sentence [CR ECF No. 94] 2).

Third, the executed Plea Agreement contained an appeal waiver. (*See* Plea Agreement ¶¶ 12, 14). Whether a defendant "waived some or all appeal rights" is a "highly relevant factor." *Otero*, 499 F.3d at 1270 (citing *Flores-Ortega*, 528 U.S. at 480). At the Change of Plea Hearing, the Court specifically reviewed with Movant her right to appeal her sentence, and Movant acknowledged that she was knowingly and voluntarily waiving that right as part of her executed Plea Agreement:

> THE COURT: In Paragraph 12, you are informed that you have the right to appeal your sentence, but in exchange for the agreement that you have negotiated with the Government, you are giving up your right to appeal your sentence unless it exceeds the statutory maximum or is the result of an upward departure or variance from the guideline range I've established at sentencing. Noting in the agreement affects the Government's right to appeal. If the Government does file a Notice of Appeal, then you are released from your waiver of appellate rights.
>
> You have discussed this appellate waiver provision with your attorney and you are waiving your right to appeal your sentence knowingly and voluntarily. That's also found in Paragraph 14.
>
> Do you understand and agree?
>
> THE DEFENDANT: Yes.

(Change of Plea Tr. 13:12–25; 14:1–2).

The Court once again advised Movant of her right to appeal her sentence at the Sentencing Hearing. (*See* Sentencing Tr. 14:9–13). Based on this record, there was no reason for counsel to believe that Movant would want to appeal contrary to her representations to the Court at the Change of Plea and Sentencing Hearings.

The final factor is whether there were "nonfrivolous grounds for appeal." *Flores-Ortega*, 528 U.S. at 480. None exists here. Movant pleaded guilty and received the sentence bargained

15

for, and knowingly and voluntarily waived her right to appeal — as evidenced by her answers to the Undersigned's questions about the appeal waiver at the Change of Plea colloquy — in return for concessions made by the Government. No rational defendant would have wanted to appeal under these circumstances.

Based on this record, there was no constitutional duty for counsel to consult with Movant about filing an appeal. Accordingly, Movant's claim of ineffective assistance in Ground Three is due to be denied.

### D. Certificate of Appealability

Movant requests a certificate of appealability. (*See* Mot. 12). A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (alteration added). The Supreme Court has described the limited circumstances when a certificate of appealability should properly issue after the district court denies a habeas petition:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy [section] 2253(c) is straightforward: The [Movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (alterations added). Movant does not satisfy this burden, so the Court will not issue a certificate of appealability.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion Under 28 U.S.C. [Section] 2255 to Vacate, Set Aside, or Correct Sentence **[ECF No. 1]** is **DENIED on all grounds**.

2. A *certificate of appealability* is **DENIED**. Because there are no issues with arguable merit, an appeal would not be taken in good faith, and thus, Movant is not entitled to appeal *in forma pauperis*.

3. The Clerk of Court is directed to **CLOSE** this case.

CASE NO. 22-21940-CIV-ALTONAGA

**DONE AND ORDERED** in Miami, Florida, this 31st day of October, 2022.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:   Movant, Tyra Nance, *pro se*
      counsel of record